Filed 7/13/22  P. v. Tellez CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089819 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F07541) |
| v. | OPINION ON TRANSFER |
| ELPIDIO TELLEZ, | |
| Defendant and Appellant. | |

A trial court denied defendant Elpidio Tellez's request to strike a firearm enhancement under Penal Code section 12022.53. (Statutory section references that follow are to the Penal Code unless otherwise stated.)  Defendant appeals that denial, arguing that the court:  (1) erred in excluding evidence of his activities in prison when considering whether to strike the enhancement, and (2) failed to consider whether it should reduce, rather than strike, the enhancement.

1

We filed an unpublished opinion on July 6, 2020, in which we concluded any error in excluding evidence was harmless, and the trial court did not have the authority to reduce, rather than strike, the firearm enhancement. We thus affirmed the judgment. Our Supreme Court granted review of the matter on September 21, 2020.

On April 27, 2022, the Supreme Court transferred the matter back to this court with instructions to vacate our previous decision and reconsider the cause in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), which concluded that trial courts are permitted to strike a firearm enhancement under section 12022.53, subdivision (d) and impose a lesser, uncharged firearm enhancement, instead. Both parties submitted supplemental briefing. After considering the matter in light of *Tirado*, we will affirm the judgment on different grounds.

## FACTS AND HISTORY OF THE PROCEEDINGS

Defendant shot and killed the victim outside a bar. At trial, defendant claimed that he acted in self-defense. After his conviction of second degree murder with personal and intentional discharge of a firearm causing death (§§ 187, 12022.53, subd. (d); count one), possession of a firearm by a felon (§ 29800, subd. (a)(1); count two), and receipt of stolen property (§ 496, subd. (a); count three), defendant appealed. We affirmed the judgment but remanded the case so that the trial court could consider whether to exercise its discretion under the newly enacted section 12022.53, subdivision (h) to strike the firearm enhancement. (*People v. Tellez* (Jan. 16, 2019, C077915) [nonpub. opn.].)

The court held a hearing following the remand. Defense counsel brought witnesses to testify at the hearing, including witnesses that could speak to defendant's activities while he had been in state prison. The court questioned the relevance of such evidence, saying: "If I was at the sentencing, whenever this was sentenced, I wouldn't have had that information before me. If I'm only supposed to decide what I would have

2

done at that time, why would whatever he's done since that time matter for the purposes of mitigation?" The court eventually allowed defense counsel to question two witnesses.

The first witness, defendant's ex-wife, testified to defendant's activities raising his children, nieces, and nephews. She also briefly spoke about defendant's activities in prison. Specifically, he coached sports teams at the prison, had received educational certificates, and was serving as a religious cleric at the institution. On cross-examination, the prosecutor elicited testimony that defendant had previously pleaded no contest to false imprisonment arising out of a domestic violence incident with his ex-wife. The second witness, defendant's son, testified to defendant's efforts to raise him, coach his sports teams, and teach him about accountability and responsibility.

The court also reviewed seven reference letters submitted by defendant's family members. One letter described some of defendant's activities while incarcerated, noting that he had completed several Alternative to Violence programs, was participating in educational programming, assisting other inmates in earning their GEDs, was an athletic coach for baseball, basketball, and football programs, and was a clerk for several different religious denominations.

The court denied the request to strike the enhancement, saying, in part: "Throughout all of these letters that were presented to the Court, over and over, and with the testimony I heard, there is a constant refrain about things the defendant did for them. He was a model of somebody who is sort of upstanding, somebody who, as a coach, in his players inspires accountability and courage, and somebody who would encourage people to do the right thing and stand up and be proud of yourself and who you are, and be all that you can be. . . . He might be a very fine man, but what he did was, after shooting this man down in front of a bar, he ran. He ran and he hid. And the police had a pretty significant manhunt in order to find him. He tossed the gun, and tried to get rid of the evidence. And I might add, he was a convicted felon for domestic violence against his wife . . . he was a convicted felon, and never should have had a gun, and he never

3

should have gone to that bar. When he saw [the victim], he should have gone the other direction. That's all he had to do, was go away. He did not have to confront him. He did not have to bring a gun. When you bring a gun to a conversation or a disagreement, you are bringing it because you know you are going to use it. You prepare yourself mentally for having to use it. And that's what he did. He prepared himself. He armed himself. He had a loaded gun that was a stolen gun . . . . The victim is dead, and you shot him down. You shot him in the back, and you ran from the scene, and those facts do not warrant the Court striking this enhancement."

DISCUSSION

I

*Evidence Considered on Remand*

Defendant argues that the trial court was required to consider evidence of his conduct in prison because such evidence is customary in sentencing decisions and would demonstrate that defendant is "on the road to reformation." The People respond that the remand was limited in scope, the court had discretion to limit the evidence, and, in any case, any error was harmless. If there was error here, we agree that it was harmless.

Both parties agree that any error in this instance only warrants reversal if it was prejudicial under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Partida* (2005) 37 Cal.4th 428, 439; *People v. Dobbins* (2005) 127 Cal.App.4th 176, 182.) Under *Watson*, we "ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Partida,* at p. 439.) Our "review focuses not on what a reasonable [factfinder] *could* do, but what such a [factfinder] is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable

4

probability the error of which the defendant complains affected the result." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) When deciding whether to strike a sentence enhancement, a trial court is entitled to consider general sentencing objectives, circumstances in aggravation and mitigation listed in the California Rules of Court, and "any other relevant consideration." (Cal. Rules of Court, rule 4.428(b); *People v. Pearson* (2019) 38 Cal.App.5th 112, 117.)

As the trial court explained in its decision, defendant was previously convicted of domestic violence against his then wife. As a convicted felon, he was not entitled to have a firearm, but he still procured a stolen gun for the purpose of confronting the victim and then shooting him in the back. He could have opted out of the crime at several junctures, but still proceeded to shoot and kill the victim. After he had killed the victim, he ran, hid, and tried to dispose of incriminating evidence, leading police on a significant manhunt to find him. Finally, the court contrasted defendant's situation with the victim's: "I know being in prison is hardly the type of life that anybody wants to lead, but are you [*sic*] not dead. The victim is dead, and you shot him down. You shot him in the back, and you ran from the scene, and those facts do not warrant the Court striking this enhancement."

Moreover, the court did, in fact, consider some evidence of defendant's postconviction activities in prison. Defendant's ex-wife testified that he was coaching sports teams in prison and was working to be a "role model for the guys in there, and he has helped shape a lot of the guys even in prison to help them on a better way and path in life." Similarly, her written reference letter explained that defendant was participating in educational programming in prison and had led the prison football team to a championship in 2018. The court did not give great weight to these statements, saying that although the reference letters and testimony cast him as a role model who inspired others to "accountability and courage," the facts of his crime, which involved shooting a man in the back and fleeing afterwards, undercut those statements.

Given the weight of the evidence the court cited in its decision, it is unlikely that additional evidence of defendant's conduct in prison would have altered the result of the hearing. We conclude that it is not reasonably probable that the court's decision would have been more favorable to the defendant had he been permitted to present more evidence of his postconviction activities. Any error was thus harmless.

II

*Reduction of the Firearm Enhancement*

Defendant contends that the trial court did not understand that it had the ability to reduce his firearm enhancement, rather than strike it entirely, and thus could not have exercised informed discretion, as it was required to do. Defendant argues that, had the court been aware of the full scope of its discretion, it may have imposed a lesser enhancement, and the case should be remanded to give the trial court that opportunity. The People respond that defendant forfeited this argument because he did not ask to reduce or modify the enhancement at the court hearing, and even if not forfeited, any error was harmless because it is clear the trial court would not have reduced defendant's sentence. We agree with the People that any error was harmless.

" 'Section 12022.53 sets forth the following escalating additional and consecutive penalties, beyond that imposed for the substantive crime, for use of a firearm in the commission of specified felonies, including . . . murder: a 10-year prison term for personal use of a firearm, even if the weapon is not operable or loaded (*id.*, subd. (b)); a 20-year term if the defendant "personally and intentionally discharges a firearm" (*id.*, subd. (c)); and a 25-year-to-life term if the intentional discharge of the firearm causes "great bodily injury" or "death, to any person other than an accomplice" (*id.*, subd. (d)). For these enhancements to apply, the requisite facts must be alleged in the information or indictment, and the defendant must admit those facts or the trier of fact must find them to be true.' [Citation.] Section 12022.53, subdivision (f) provides, 'Only one additional

6

term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment . . . .' " (*People v. Morrison* (2019) 34 Cal.App.5th 217, 221 (*Morrison*).) Under section 12022.53, subdivision (h), " 'The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law.' " (*Morrison,* at pp. 221-222.)

In *Morrison*, as in this case, the jury only found true an enhancement allegation under section 12022.53, subdivision (d). (*Morrison, supra*, 34 Cal.App.5th at p. 221.) The trial court declined to strike the enhancement, and defendant argued on appeal that "the court did not understand the scope of its discretion," in that it "had the discretion to modify the enhancement from that established by section 12022.53, subdivision (d), which carries a term of 25 years to life, to a 'lesser included' enhancement under section 12022.53, subdivision (b) or (c), which carry lesser terms of 10 years or 20 years, respectively." (*Ibid.*) The First District Court of Appeal agreed, based, in part, on cases that concluded courts "may impose a 'lesser included' enhancement that was not charged in the information when a greater enhancement found true by the trier of fact is either legally inapplicable or unsupported by sufficient evidence." (*Id.* at p. 222.) Several courts disagreed with *Morrison*, however, and concluded that trial courts only had authority to strike or dismiss a section 12022.53 enhancement, rather than modify it. (See, e.g., *People v. Yanez* (E070556) opn. filed Jan. 21, 2020, review granted Apr. 22, 2020, S260819, vacated & trans. for reconsideration in light of *Tirado*, sub. opn. filed June 24, 2022.)

The Supreme Court resolved the split in *Tirado*, in which it concluded "the statutory framework permits a court to strike the section 12022.53(d) enhancement found

7

true by the jury and to impose a lesser uncharged statutory enhancement instead." (*Tirado, supra*, 12 Cal.5th at p. 692.) "To summarize: When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c). The plain statutory language supports this conclusion." (*Id.* at p. 700, fns. omitted.)

Assuming defendant's argument that the trial court misunderstood its discretion was not forfeited, remand would not be warranted here because the trial court would have reached the same conclusion even if it knew of the discretion granted by *Tirado*. Where a court is unaware of the scope of its discretion, " 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' [Citation.]" (*People v. Flores* (2020) 9 Cal.5th 371, 431-432.) Here, in denying defendant's request, the trial court gave a lengthy denunciation of defendant's conduct, describing the various ways in which defendant could have avoided the situation or shown accountability afterwards. The court concluded that defendant deserved the sentence he was receiving, saying, "[t]he victim is gone. Dead. He got a life sentence, and now you are asking that you should be spared a similar fate, but truly absent the death penalty. He got the death penalty. You are still alive. [¶] I know being in prison is hardly the type of life that anybody wants to lead, but [you are] not dead. The victim is dead, and you shot him down. You shot him in the back, and you ran from the scene, and those facts do not warrant the Court striking this enhancement. [¶] . . . I do not think it would be just or proper to do so." Based on the court's comments, it is clear the court would not have exercised its discretion to impose a lesser firearm enhancement, and remand is not required.

8

DISPOSITION

The judgment is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
HOCH, J.

_____
KRAUSE, J.

9